UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:04CV67-3-MU

| | |
|---|---|
| **CHARLES MICHAEL CASSELL, III,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| **SIDNEY HARKELROAD,** ) | |
| ) | |
| **Respondent.** ) | |
| _____) | |

**THIS MATTER** is before the Court upon Petitioner Charles Michael Cassell's (hereinafter "Petitioner") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 on May 25, 2004 (Document No. 1.) Also before the Court is the State's Motion for Summary (Document No. 7); Petitioner's "Response to State Motion for Summary Judgement" (Document No. 11); Petitioner's "Extraordinary Motion and Order" in which Petitioner seeks a Court Order directing prison personnel not to mix up his legal documents (Document No.21) and Petitioner's Motion for Paper and Carbon Paper (Document No. 23.)[1] For the reasons set forth in this Order, Petitioner's Petition for Writ of Habeas Corpus will be denied; Respondent's Motion for Summary Judgment will be granted; and Petitioner's "Extraordinary Motion and Order" and his Motion for Paper and carbon paper will be denied.

---

[1] Documents 21 and 23 were motions filed by Petitioner in both this action and in his 42 U.S.C. § 1983 (5:01cv153) action. Petitioner's 1983 Complaint has been dismissed by this Court and the above referenced motions were dismissed as moot (See 5:01cv153, Document No. 65.)

1

## I. Factual and Procedural Background

A review of the record reveals that on April 25, 2002 Petitioner was convicted, after trial by jury, of robbery with a dangerous weapon and sentenced to 146-185 months imprisonment. On January 6, 2004 the North Carolina Court of Appeals issued an unpublished opinion finding no error and the Supreme Court of North Carolina denied discretionary review on March 4, 2004. Petitioner was initially represented but waived counsel and acted pro se during trial. On appeal, Petitioner was represented by Barbara Blackman, Assistant Appellate Defender.

Petitioner filed the instant Petition on May 25, 2004 in which he contends that: (1) he was coerced and intimidated and involuntarily waived his right to counsel during trial and (2) the North Carolina Court of Appeals erred in ruling that the trial court properly exercised its discretion in refusing to appoint Mr. Minor as standby counsel.

## II. Miscellaneous Motions

Petitioner filed two miscellaneous motions in this case which will be denied. First Petitioner filed an "Extraordinary Motion" in which he complains that prison officials mixed up his legal papers from this action and his 42 U.S.C. § 1983 suit during a shake down of his cell on February 7, 2006 causing his legal papers from two separate suits to be out of chronological order. Petitioner alleges that this was done in an effort to stop him from filing a civil suit involving his medical care while in custody. The Court notes that this case has been fully briefed since July 2004, therefore any mixing of documents by prison officials caused Petitioner no harm with respect to this instant case. Therefore, Petitioner's Motion will be denied.

Next, Petitioner filed a Motion for Paper and Carbon Paper asking this Court to direct the prison to assure that Petitioner has at least five sheets of carbon paper and fifty sheets of papers in his

possession at all times for legal work. Petitioner has not established grounds for this kind of blanket directive and the Court declines to grant Petitioner's request. Furthermore, the Court notes that Petitioner's voluminous filings in this case do not indicate a problem with Petitioner having sufficient paper on which to draft his legal documents. Petitioner's Motion for Paper is denied.

### III. Standard of Review

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication; (1) "resulted in a decision that was contrary to, or involved as unreasonable application of, clearly established Federal laws, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

Id. (Internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even

3

if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

Finally, the applicable standard of review is to be applied to "all claims 'adjudicated on the merits,'" that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.2d 445, 455 (4th Cir. 1999).

## IV. Analysis

### A. Right to Counsel Claim

Petitioner contends that he was coerced and intimidated and involuntarily waived his right to counsel during trial. Petitioner essentially combines two of his assignments of error on direct appeal, i.e., (1) that he did not knowingly and voluntarily waive his right to counsel and (2) he was incompetent to stand trial because he did not understand the proceedings against him.

#### 1. The Trial Court's Finding of Competency to Stand Trial is Presumed Correct

Judge Haigwood conducted a pre-trial competency hearing during which the state introduced a report from Dr. Nicole F. Wolfe, Forensic Psychologist at Dorothea Dix Hospital, which stated that Petitioner was competent to stand trial. Petitioner, though offered the opportunity to present evidence, declined to do so. Judge Haigwood then found Petitioner competent to stand trial and stated:

> Then the Court finds pursuant to the evidence received that - and in accordance with the evaluation of Dorothea Dix Hospital, that the Defendant is capable of proceeding to trial - and I'll use the legal language. The Court finds specifically that the Defendant is able to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, and to assist in his defense in a rationale and reasonable manner. And, therefore, the Court finds that the Defendant has the legal capacity to proceed and, therefore, so finds.

(Transcript at 9.)

The trial court's finding of competency based on the Dorothea Dix report of Dr. Wolfe and Judge Haigwood's personal observations of Petitioner's in court demeanor, is presumed correct on federal habeas review pursuant to 28 U.S.C. § 2254(e)(1). See also, Maggio v. Fulford, 462 U.S. 111 (1983) (trial court's finding of competency is presumed correct on federal habeas review). Moreover, Petitioner had a pre-trial competency hearing in state court to present evidence in support of his claim. Petitioner chose to present no evidence. Petitioner is not now entitled to a federal evidentiary hearing on competency in order to present evidence which could have been presented at this state hearing. See Wilson v. Moore, 178 F.3d 266, 272-72 (4th Cir.) (affidavit not presented to state court cannot be considered on federal habeas review). cert. denied, 528 U.S. 880 (1999); Bell v. Jarvis, 236 F.3d 149, 171 (4th Cir. 2000).

## 2. Petitioner Knowingly and Voluntarily Waived His Right to Counsel

Next, Petitioner contends that he did not knowingly and voluntarily waive his right to counsel and did not understand the nature of the proceedings against him. The Sixth Amendment right to represent oneself in a criminal matter is established in Faratta v. California, 422 U.S. 896, 807 (1975). A criminal defendant, if he chooses to waive his right to counsel, must do so knowingly and intelligently. Godinez v. Moran, 509 U.S. 389 (1993). In addition to knowingly and voluntarily waiving the right to counsel, a criminal defendant must also be competent to stand trial. Id. at 396. The competence required to waive the right to counsel is the competence to waive the right, not the competence required to represent oneself. Id. at 399. In other words, there is no heightened standard of competence required of a criminal defendant seeking to waive his right to counsel. Instead the competence required to stand trial is the same competence required to waive the right to counsel.

That is, whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." Johnson v. Zerbst, 304 U.S. 458, 468 (1938).

Here, as stated above, after conducting a pretrial competency hearing, the trial court determined that Petitioner was competent to proceed to trial. Next, the court conducted two colloquies with the Petitioner concerning waiving his right to counsel. While the transcript does reflect some frustration by the court with the Petitioner, the record supports that Petitioner did understand that he was giving up his right to counsel. The trial court's concern related not to Petitioner's competence to stand trial, but to Petitioner's competence to act as a lawyer. However, Petitioner's ability to act as a lawyer is not the test. In fact, in Faretta, the Court specifically stated that a defendant's "technical legal knowledge " is "not relevant" to the determination whether he is competent to waive his right to counsel. Faretta, 422 U.S. at 835. Thus a criminal defendant's ability to represent himself has no bearing on his competence to choose to represent himself.

The North Carolina Court of Appeals adjudicated the substance of this claim, citing to all the relevant constitutional law, on direct appeal and denied it on the merits as follows:

> Defendant first contends the trial court erroneously permitted him to proceed pro se in the absence of an unequivocal, knowing, and voluntary waiver of counsel. We disagree.
>
> Before allowing a defendant to waive in-court representation by counsel, the trial court must insure that constitutional and statutory standards are satisfied. First, waiver of the right to counsel and election to proceed pro se must be expressed "clearly and unequivocally." State v. Thomas, 331 N.C. 671, 673, 417 S.E. 473, 475 (1992). Second, "once a defendant clearly and unequivocally states that he wants to proceed pro se, the trial court, to satisfy the constitutional standards, must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel." Thomas, 331 N.C. at 674, 417 S.E.2nd at 476. After careful review, we conclude Defendant clearly and unequivocally waived counsel and knowingly, intelligently, and voluntarily waived his right to in-court representation by counsel.

Defendant, relying upon State v. Thomas, supra, contends his statements that he wanted to represent himself with the aid of counsel does not indicate a clear, unequivocal, knowing, intelligent and voluntary waiver of his right to counsel. In State v. Thomas, 331 N.C. 671, 417 S.E.2d 473 (1992), our Supreme Court held that a request to participate with court-appointed counsel in conducting the trial does not constitute a clear and unequivocal request to proceed pro se. Indeed, "there is no right to appeal in propria persona and by counsel." State v. McGuire, 296 N.C. 69, 254 S.E.2d 165 (1979). In Thomas, at multiple pre-trial hearings, Mr. Thomas requested the right to proceed pro se with the assistance of counsel. During the trial, defense counsel asked for permission to withdraw. Defendant then made a motion to dismiss his attorneys saying he needed legal counsel that was not incompetent. Both motions were denied. At the final hearing Defendant referred to himself as lead counsel and to appointed counsel as his assistants. The trial court took this to be a request to proceed pro se and, without clarifying the options available to Mr. Thomas, discharged counsel. Our Supreme Court found this to be an erroneous discharge and ordered a new trial.

Unlike Thomas, in this case, Defendant stated several times that he desired to represent himself and the Court conducted two lengthy colloquies with the defendant regarding his request to proceed pro se. Thus, the trial court, unlike Thomas, did not infer or assume Defendant desired to appear pro se; rather, Defendant stated his request several times and presented documents which he contended demonstrated his ability to represent himself. Thus, we conclude the trial court did not erroneously allow Defendant to proceed pro se.

Defendant next argues the trial court erred in trying Defendant because it found Defendant did not understand the proceedings against him. Defendant contends that if a defendant is incompetent to waive counsel, he is also incompetent to proceed to trial, as the standards of competency for standing trial and waiving counsel are identical. As the trial court, based upon a psychiatric examination, determined Defendant was competent to stand trial, we disagree.

In Godinez v. Moran, 509 U.S. 389, 125 L.E. 2d 321, 113 S.Ct 2589, the Supreme Court explained the difference between competency to stand trial and competence to plead guilty or waive counsel: A finding that a defendant is competent to stand trial, however is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. In this sense there is a 'heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence." Godinez, 509 U.S. at 400-401. As the Court further explained:

The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. See Drope v. Missouri, 420 U.S. 162, 171 43 L.Ed. 2d 103, 95 S. Ct 896 (defendant is incompetent if he "lacks the capacity to

understand the nature and object of the proceedings against him") (emphasis added). The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced. See Faretta v. California, 422 U.S. 806, 835, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (defendant waiving counsel must be made "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'") (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 87 L. Ed. 268, 63 S. Ct. 236 (1942)); Boykin v. Alabama, 395 U.S. 238, 244, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (defendant pleading guilty must have " a full understanding of what the plea connotes and of its consequences").

In this case, in initially determining Defendant did not knowingly and voluntarily waive counsel, the trial court was not concerned about Defendant's ability to understand the proceedings; rather, the trial court was concerned about Defendant's ability to act as a lawyer. n1 Indeed, the trial court expressed concerns about Defendant's ability to act with decorum during the proceedings and was concerned that defendant lacked the ability to present the complicated defense of insanity. Accordingly, we find the trial court did not err in trying Defendant.

------------------------------------------------Footnotes -------------------------------------------------------

n1 Although the trial court expressed concerns about Defendants ability to represent himself, one should note that the competence required for waiver of counsel is not whether the defendant is competent to represent himself; rather, the trial could should be concerned with whether the defendant competently and intelligently waived counsel. See Godinez, 509 U.S. at 399. As explained in Faretta v. California, the defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel. Faretta, 422 U.S. at 836. Indeed, a defendant "may conduct his own defense ultimately to his own detriment." Faretta, 422 U.S. at 834.
------------------------------------------------ End Footnotes --------------------------------------------------

State of North Carolina v. Cassell, 162 N.C. App. 181 (January 6, 2004), attached to Respondent's Motion for Summary Judgment.

This state court adjudication of the substance of Petitioner's claim is correct and fully consistent with United States Supreme Court precedent. It did not result in a decision contrary to, nor involve and unreasonable application of clearly established federal law as determined by the Supreme Court of the United States in Godinez v. Morgan, 509 U.S. 389 (1993); Drope v. Missouri, 420 U.S.

162 (1975) and Faretta v. California, 422 U.S. 806 (1975). Nor is the state court adjudication of this claim based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. Therefore, Petitioner's claim is denied pursuant to 28 U.S.C. § 2254(d) and (e). See Williams v. Taylor, 529 U.S. 362 (2000); Wiggins v. Smith, 529 U.S. 510 (2003); Lockyer v. Andrade, 538 U.S. 63 (2003); Early v. Packer, 537 U.S. 3 (2002); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000) (en banc), cert. denied, 524 U.S. 830 (2001).

**B. There is no Constitutional Right to Standby Counsel**

Petitioner contends that the North Carolina Court of Appeals erred in ruling that the trial court properly exercised its discretion in refusing to appoint Mr. Minor as standby counsel. Importantly, there is no constitutional right to standby counsel. See McKaskle v. Wiggins, 465 U.S. 168, 183 (1989) (recognizing that while a court may appoint stand-by counsel, Faretta does not require it to permit "hybrid' representation"); United States v. Einfeldt, 138 F.3d 373, 378 (8th Cir.) (No constitutional right to standby counsel) cert. denied. 525 U.S. 851 (1998); United States v. Moya-Gomez, 860 F.2d 706, 740 (7th Cir. 1985) (no requirement to appoint standby counsel), cert. denied, 492 U.S. 908 (1989). Because there is no constitutional right to standby counsel, neither the trial court nor the North Carolina Court of Appeals could have violated any of Petitioner's federal constitutional rights by refusing to appoint standby counsel.

Furthermore, to the extent that Petitioner has raised this claim as a due process violation, the claim would still fail. The North Carolina Court of Appeals adjudicated and denied Petitioner's standby counsel claim as follows**:**

> Defendant next argues the trial court abused its discretion in refusing to permit retained counsel, David Minor, to act as standby counsel or to appoint standby counsel for Defendant. Pursuant to N.C. Gen. Stat. §§ 15A-1243, when a defendant has elected to proceed without

9

the assistance of counsel, the trial judge in his discretion may determine that standby counsel should be appointed to assist the defendant when called upon and to bring to the judge's attention matters favorable to the defendant upon which the judge should rule upon his own motion. Appointment and compensation of standby counsel shall be in accordance with rules adopted by the Office of Indigent Defense Services.

Appointment of standby counsel is a discretionary matter for the trial judge. Thus, our standard of review abuse of discretion. State v. Seraphem, 90 N.C. App. 368. 371-72, 368 S.E.2d 643, 645 (1988). Defendant contends that he was barely able to elicit admissible evidence, argued with witnesses, made outbursts in and outside of the presence of the jury, was unaware of motions to dismiss for insufficiency of the evidence, did not understand proposed instructions, and did not know of any instructions to request beyond an insanity instruction. Defendant also references the trial court's repeated doubts as to his inability to present a defense as support for his contention that standby counsel could have assisted him in his presentation of evidence and in the instructional conference. However, the record indicates that in support of Defendant's request to proceed pro se, Defendant presented documentation that he had handled other legal matters pro se and he informed the court that he only wanted legal assistance fr jury selection and other unspecified legal issues. Given Defendant's insistence upon proceeding pro se and his evidence demonstrating he was capable of handling his own legal affairs, we conclude the trial court did not abuse its discretion in not appointing standby counsel.

State of North Carolina v. Cassell, 162 N.C. App. 181 (January 6, 2004), attached to Respondent's Motion for Summary Judgment.

This Court has reviewed the North Carolina Court of Appeals decision and the two colloquies the trial court had with the defendant and is satisfied that the trial court's decision not to appoint standby counsel was reasonable and is supported by the record.

Petitioner's claim that the North Carolina Court of Appeals erred in ruling that the trial court properly exercised its discretion in refusing to appoint Mr. Minor as standby counsel is denied as there is no constitutional right to standby counsel and the trial court's decision to deny the appointment of standby counsel is reasonable and is supported by the record.

## V. ORDER

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Respondent's Motion for Summary Judgment (Document No. 7) is GRANTED;

2. Petitioner's Petition for a Writ of Habeas (Document No. 1) is DENIED and DISMISSED;

3. Petitioner's "Extraordinary Motion" (Document No. 21) and Motion for Paper (Document No. 23) are DENIED.

**SO ORDERED**.

Signed: October 10, 2006

Graham C. Mullen
United States District Judge